# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

LA TIDTUS JONES                                                    PETITIONER

v.                                                      No. 3:15CV8-MPM-JMV

NORRIS HOGAN, ET AL.                                              RESPONDENTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of La Tidtus[1] Jones for a writ of

*habeas corpus* under 28 U.S.C. § 2254.  The State has responded to the petition, and Mr. Jones has

replied, and the matter is ripe for resolution.  For the reasons set forth below, the instant petition for a

writ of *habeas corpus* will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may

be detained, is ancient.  Duker, The English Origins of the Writ of Habeas Corpus:  A Peculiar

Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St.

John's L.Rev. 55 (1934).  It is "perhaps the most important writ known to the constitutional law

of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is

equally significant in the United States.  Article I, § 9, of the Constitution ensures that the right

of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or

invasion, public safety may require it.  *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56.

Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789.  *Habeas*

---

[1] Mr. Jones' name has a different spelling in the Mississippi Department of Corrections
(Latidius), two different spellings in the Mississippi Supreme Court (Latitus or Latidius), the instant
case (Latitus), and his previous petition for a writ of *habeas corpus* in case No. 4:14-cv-83-DMB-
JMV (Latidtus).  In various documents he has provided the court, he has also spelled his name La
Tidtus, the spelling the court will use in the instant memorandum opinion.

*corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id.* Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

## Procedural Posture

La Tidtus Jones is in the custody of the Mississippi Department of Corrections and is currently housed at the East Mississippi Correctional Institution in Meridian, Mississippi. On July 19, 2011, Jones was convicted in the Circuit Court of Tunica County, Mississippi, of one count of uttering a forgery. *See* State Court Record (hereinafter "SCR" for Case No. 2011-KA-01468-COA), Vol. 1, p. 122. On August 23, 2011, he was sentenced as a habitual offender under Miss. Code Ann. § 99-19-81 to serve ten years in the custody of the Mississippi Department of Corrections. SCR, Vol. 1, p. 141-143. [2]

---

[2] On September 28, 2010, Jones was convicted of one count of robbery in the Circuit Court of Washington County, Mississippi. On October 6, 2010, he was sentenced to serve fifteen years in the custody of the MDOC. *Jones v. State,* 104 So.3d 851 (Miss. Ct. App. 2012) *reh'g denied,* Nov. 27, 2012 (Case No. 2010-KA-01845-COA). Jones filed a previous federal petition for a writ of *habeas corpus* challenging that conviction. The petition was dismissed with prejudice on February 13, 2015; the court found it was untimely filed under 28 U.S.C. § 2244(d)(2). Case No. 4:14CV83-DMB-JMV.

Jones filed an appeal of his conviction and sentence with the Mississippi Supreme Court.

On appeal, he raised the following ground for relief, through counsel:

> **Issue 1.** Whether the indictment handed down was fatally defective where it charged the appellant with uttering a forgery, and the check described in the indictment was a different check altogether than that which was attached, requiring different elements of proof.

> **Issue 2.** Whether, after a pretrial hearing on the matter, the trial court committed plain error by forcing the appellant to be shackled when the prospective jurors entered the courtroom, during voir dire, and throughout the entire jury selection process.

> **Issue 3.** Whether the trial court erred in failing to suppress audio recording evidence of an interrogation over the objections of the defense that the appellant's *Miranda* rights had been violated.

> **Issue 4.** Whether the trial court erred when it failed to sustain the appellants motion to set aside the jury's verdict (JNOV) as legally insufficient, or, in the alternative, for failing to grant the motion for a new trial as the jury's verdict was contrary to the overwhelming weight of the evidence.

On April 23, 2013, the Mississippi Court of Appeals affirmed the judgment of the circuit court.

*Jones v. State,* 130 So.3d 519 (Miss. Ct. App. 2013), *reh'g denied*, Sept. 17, 2013, *cert. denied,*

Jan. 23, 2014 (No. 2011-KA-01468-COA).

Jones filed an Application to Proceed in the Trial Court with a Motion for Post-

Conviction Relief in the Mississippi Supreme Court on June 27, 2014. In the application he

raised the following issues *pro se*:

> **Issue 1.** Whether Jones has been subjected to a violation of due process of law and the equal protection clause in violation of the 5th and 14th amendments to the United States Constitution and whether there was prosecutorial misconduct at Jones trial denying Jones a fair trial under the equal protection clause of the United States and the state of Mississippi laws?

> **Issue 2.** Whether the trial court committed "plain error" when it passed sentence upon applicant Jones without having subject matter jurisdiction over Miss. Code Ann. § 99-19-81 and whether jeopardy attached?

> **Issue 3.** Whether the trial court committed "plain error" in ruling admissible for trial Jones's alleged confession of December 4th, 2009, since applicant testified at the

suppression hearing that the investigating officer "Michael Nichols" had made "promises and threats" and that the state never put on any officers to rebut Jones's allegations?

**Issue 4.** Whether the trial court erred by failing to review and listing to the entire taped interrogation and by failing to suppress the statement there from?

**Issue 5.** Whether Petitioner Jones is entitled to a new trial where a "juror" failed or refused to disclose that "he" was "acquaint" with state's key witnesses the alleged victim "Linda Tutor" of Money Tree Inc.

**Issue 6.** Whether Jones United States Constitutional 6th Amendment right to be confronted with the witnesses against him from the "First Security Bank" of Batesville, Mississippi?

**Issue 7.** Whether the trial court committed "plain error" in allowing into evidence at trial of another separate alleged offense by Jones and if so whether such other (check) evidence was of another separate offence denying Jones due process to a fair trial?

**Issue 8.** Whether the Petitioner Jones been denied effective assistance of attorney of trial and on appeal as the law afford him under the 6th Amendment of the United States Constitution and the State of Mississippi Constitution (1890)?

On October 2, 2014, the Mississippi Supreme Court denied the motion. The court found that the claims of prosecutorial misconduct and plain error in sentencing were without merit. The court also found that Jones' claim of error in the admission of his police statement was barred by *res judicata*. As to Jones' claims of juror misconduct, confrontation clause violation, and plain error in admission of evidence, the court held that Jones was capable of raising these issues at trial or on direct appeal, and they were barred because he failed to do so. Miss Code Ann. § 99-39-21(1). The court also held that Jones' claims of ineffective assistance of counsel did not meet the requirements of *Strickland v. Washington*, 466 U.S. 668 (1984).

Mr. Jones' grounds for relief can be found in the instant petition for a writ of *habeas corpus*, memorandum, and amendments, which the court has taken verbatim from ECF Docs. 1, 3, 13, 14, 15). Mr. Jones raises the following grounds for relief, *pro se*, in ECF Doc. 1:

- 4 -

**Ground One.** Whether the indictment handed down was fatally defective where it charged Jones with uttering a forgery.

**Ground Two.** Whether, after a pretrial hearing on the matter, the trial court committed plain error by forcing Jones to be shackled in front of jury.

**Ground Three.** Whether the trial court erred in failing to suppress audio recording evidence on an interrogation over objection.

**Ground Four.** Whether the trial court erred when it failed to sustain Jones motion to set aside the jury's verdict (JNOV).

Jones raises the following grounds for relief, *pro se*, in ECF Doc. 3:

**Ground Five.** Whether Petitioner Latitus Jones denied effective assistance of counsel on direct appeal?

**Ground Six.** Whether the trial court committed plain error in allowing the state in trial to introduce evidence of another separate offense by the Appellant Jones and whether such evidence were of another separate offense?

**Ground Seven.** Whether the State's prosector withheld solemn declaration or affirmations made for the purpose of establishing or proving some facts "real's trucking inc. check was return for not able to locate account" denying petitioner the right to be confronted with the witnesses against him?

**Ground Eight.** Whether there was prosecutorial misconduct committed at trial, and whether such prosecutorial misconducts denied petitioner Latitus Jones due process / a fair trial.

**Ground Nine.** Whether the court erred in ruling admissible for trial the petitioner's alleged confession of 12-04-10, since the petitioner testified at the hearing that the investigating office "Michael Nichols" had made threats and promises and the states prosecutor never put the officer on to rebut the allegations?

**Ground Ten.** Whether the trial court committed plain error when it passed sentence on petitioner Latitus Jones without having subject matter jurisdiction over M.C.A. § 99-19-81 and whether jeopardy had attached?

**Ground Eleven.** That this court is required pursuant to *Haines v. Kerner*, 404 US 519 (1972) to liberally construe petitioner's herein asserted grounds for relief.

**Ground Twelve.** That Petitioner Latidtus Jones is actual innocence of uttering forgery and that a fundamental miscarriage of justice did accured.

**Ground Thirteen.** That petitioner Jones is entitled to the relief the conviction and the sentence.

**Ground Fourteen.** That the responsibility and appointment of counsel of record was directed by Mississippi Supreme Court to George T. Holmes an attorney of the Mississippi Bar, and without an record after appointment by this court ever relieving him "attorney George T Holmes," of that appointment and his ethical responsibility. His abandonment at petitioner oral argument before the Mississippi Supreme cannot be excused or legally justified by law.

**Ground Fifteen.** That there are certain limited exceptions to the rule that proof of a crime distinct from that alleged in an indictment is not admissible against an accused.

**Ground Sixteen.** That the state never had Goss Roofing check, and no proof were ever given that Goss roofing check was a forgery and such evidence was prejudicial.

**Ground Seventeen.** That as a rule, if an out of court statement is testimonial in nature, then under the confrontation clause it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness. The state failed to make ready witnesses from the First Security Bank.

**Ground Eighteen.** That there no legal justification for the prosecutor's misconduct withholding favorable evidence in order to obtain an wrongful conviction against the petitioner.

**Ground Nineteen.** That the state did not secure the presence of all the officer present during the petitioner questioning to the alleged confession of 12-04-09 in violation of *Agee v. State,* 185 So.2d 671 (Miss. 1996).

**Ground Twenty.** That accord to Miss. Cons. Art 3 § 14 "no person shall be deprived of life or liberty except by due process."

**Ground Twenty-One.** That the habitual offender statue as applied herein violated the prohibitions of Miss. Cons. Art 3 § 22 "no persons life or liberty shall be twice placed in jeopardy for the same offense."

**Ground Twenty-Two.** That without notice a defendant cannot be tried and convicted as an habitual offender ... and that due process requires the state to give petitioner a Rule 7.09 hearing.

**Ground Twenty-Three.** That a finding of plain error is necessary when a party's fundamental rights are affected as the prejudicial errors has changed the outcome of petitioner trial and it's clear and obvious from the record.

**Ground Twenty-Four.** That due to inartful drafting as an exercise of caution and discretion the court is not to disregard Jones claims *Moore v. Ruth*, 556 So.2d 1059, 1060 (Miss. 1996).

Jones raises the following grounds for relief, *pro se*, in ECF Doc. 14[3]:

**Ground [Twenty-Five].**  Whether Jones was denied a fair trial when the state use false testimony of Linda Tutor about "it being a Saturday and her not being able to verify a check"?

**Ground [Twenty-Six].**  Whether Jones deserves *habeas corpus* relief after being denied a fair trial because one of the juror's failed to disclose that he was acquaint with state's key witness Ms. Tutor.  Ground [Twenty-Seven].  Whether the trial court erred in allowing the state introduce into evidence of another "check" that were erroneously attached to the indictment, whether such evidence were of another offense.

**Ground [Twenty-Seven].**  Whether the trial court erred in allowing the state ot introduce into evidence of another "check" that were erroneously attached to the indictment, whether such evidence were of another offense.

**Ground [Twenty-Eight].**  The Petitioner makes a substantial enough showing in his attach, that indeed the indictment in this case were not properly returned, by the complete absense of any proof that the grand jury ever having the "reals trucking inc" check as this is required in order for a court to try and impose punishment.

**Ground [Twenty-Nine].**  The assistant district attorney committed court misconduct. ... Knew the testimony of its witness "Linda Tutor was false..."

**Ground [Thirty].**  Jones specifically submits that respondents are holding him in their custody on illegal sentence due to the state being allowed to amend their indictment after Jones conviction under § 99-19-83 and when the evidence did not show he was him to be an habitual offender.

Jones raises the following grounds for relief, *pro se*, in ECF Doc. 15:

**Ground [Thirty-One].**  The evidence presented was insufficient to convict petitioner of uttering forgery.

**Ground [Thirty-Two].**  Petitioner was prejudiced by a discovery violation and the improper admission of character evidence and hearsay.

**Ground [Thirty-Three].**  The Circuit Court improperly admitted the "Goss Roofing Company" check over petitioner objections.

**Ground [Thirty-Four].**  The Circuit Court improperly denied petitioner his right to confront his accuser from the "First Security Bank" violating Jones 6th Amendment right.

---

[3] Mr. Jones labels these Grounds 8, 9, 10, 11, 12, and 13 in ECF, Doc. 14.  For the sake of clarity the court has relabeled the claims with numbers consecutive to the previous grounds set forth in this memorandum opinion.

The Mississippi Supreme Court found that none of the issues raised in the instant petition has merit. The claims raised in Grounds One through Four, Nine, and Thirty-One were raised and rejected on direct appeal. The remaining claims were raised and rejected in the Jones' state application for post-conviction collateral relief.

### The Doctrines of Procedural Default and Procedural Bar: Grounds Six, Seven (as it relates to the confrontation clause), Fifteen, Sixteen, Seventeen, Twenty-Three, Twenty-Six, Twenty-Seven, Thirty-Two, Thirty-Three, and Thirty-Four

Mr. Jones' claims in Grounds Six, Seven (as it relates to the confrontation clause), Fifteen, Sixteen, Seventeen, Twenty-Three, Twenty-Six, Twenty-Seven, Thirty-Two, Thirty-Three, and Thirty-Four, are precluded from review by this court under the doctrine of procedural bar. If an inmate seeking *habeas corpus* relief fails to exhaust an issue in state court – and no more avenues exist to do so – under the doctrine of *procedural default* that issue cannot be raised in a federal *habeas corpus* proceeding. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

Similarly, federal courts may not review a *habeas corpus* claim "if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir.2012). Thus, a federal court may not consider a *habeas corpus* claim when, " (1) a state court [has] declined to address [those] claims because the prisoner [has] failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, —— U.S. ——, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012) (alterations in original) (internal quotation marks omitted). This doctrine is known as *procedural bar*. To determine the adequacy of the state procedural bar, this court must examine whether the state's highest court "has strictly or

regularly applied it." *tokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)).  The petitioner, however, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" – and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself."  *Id.*

### Cause and Prejudice – and Fundamental Miscarriage of Justice – As Ways to Overcome Procedural Default or Procedural Bar

Whether a petitioner's claims are procedurally defaulted or procedurally barred, the way he may overcome these barriers is the same.  First he can overcome the procedural default or bar by showing cause for it – and actual prejudice from its application.  To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court.  *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993).  To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different.  *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003).  Even if a petitioner fails to establish cause for his default and prejudice from its application, he may still overcome a procedural default or bar by showing that application of the bar would result in a fundamental miscarriage of justice.  To show that such a miscarriage of justice would occur, a petitioner must prove that, "as a factual matter, that he did not commit the crime of conviction."  *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)).  Further, he must support his allegations with new, reliable evidence – that was not presented at trial – and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Fairman,* 188 F.3d at 644 (citations omitted).

Mr. Jones raised claims regarding juror misconduct, confrontation clause violations, and plain error in the admission of evidence in his motion for post-conviction collateral relief before the Mississippi Supreme Court, which held that the issues were capable of being raised at trial or on direct appeal and, therefore, were procedurally barred under Miss Code Ann. § 99-39-21(1), which provides:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

Miss. Code Ann. § 99-39-21(1).

Section 99-39-21(1) is an independent state procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). As Mr. Jones has not shown that the Mississippi Supreme Court has been "inconsistent and irregular" in applying § 99-39-21(1), the rule is also adequate, and he may not proceed with these claims under the federal *habeas corpus* doctrine of procedural bar.

### Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court already considered the remaining grounds in the petition on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas corpus* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to the remaining grounds of the instant petition.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the Mississippi Supreme Court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and

convincing evidence.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. §

2254(e)(1).  As discussed below, the petitioner has failed to meet this burden; as such, he cannot

use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus*

review issues already decided on the merits.

### Facts of Mr. Jones' State Convictions

In August 2010, Jones was indicted for uttering forgery of a check.  SCR, Vol. 1, p. 7-8.  The

charge stems from an incident on or about Saturday, October 17, 2009.  The indictment stated the

incident occurred on or about October 15, 2009, which was a Thursday, but the Money Tree employee

who waited on Jones testified the incident took place on a Saturday.[4]  SCR, Vol. 2, p. 128.  On that

day, shortly before closing time, Jones entered the Money Tree, a check cashing business in Tunica,

Mississippi, and presented a check for $950.09 to employee Linda Tutor to be cashed.  *Id.*  The check

was drawn from the account of "Real's Trucking, Inc.," in Gunnison, Mississippi, and dated October

12, 2009, for "contract labor."  SCR, Vol. 2, p. 130.  The account was at Woodforest Bank, and the

check was signed by "Joe Peals."  Since it was Saturday, Tutor could not verify the check with the

bank's automated telephone number, but she cashed it for Jones anyway.  Seven days later, Tutor

learned the check did not clear the bank.  SCR, Vol. 2, p. 133.

Jones then made a second trip to the same Money Tree establishment on or about Saturday,

October 24, 2009, again at closing time, attempting to cash another check for $950.87, drawn from

"Goss Roofing, Inc.," in Greenville, Mississippi, dated October 22, 2009, and signed by "Tom Best."

Tutor did not cash the check; instead, she contacted law enforcement and made casual conversation

with Jones until the police arrived.  SCR, Vol. 2, p. 136.  Law enforcement officers asked Jones to

---

[4] The indictment was amended to charge Mr. Jones as a habitual offender and to correct the
last name of the Money Tree employee (from "Taylor" to "Tutor").  SCR, Vol. 2, p. 2-6.

come to the police station for an interview, and Jones complied. SCR, Vo. 2, p. 97. After the interview, he was released.

Over a month later, a warrant was issued for Jones' arrest in connection with uttering a forgery and the robbery of a Kroger store. SCR, Vol. 3, p. 185. On December 4, 2009, Jones was interviewed a second time by law enforcement. SCR, Vol. 2, p. 51, 57, 64, 67, 99-100, 119-120.

In August 2010, Jones was indicted for one count of uttering forgery in Tunica County. The text of the indictment related to the first check from Real's Trucking; however, a copy of the second check from Goss Roofing was erroneously attached to the indictment. SCR, Vol. 1, p. 7-8

Before trial, the court held a hearing on Mr. Jones' *pro se* claim of a *Miranda* violation. SCR, Vol. 2, p. 49-76. The allegation involved statements taken by Officer Michael Nichols, chief investigator for the Tunica Police Department, who conducted the two interviews with Jones in October and December of 2009. Officer Nichols and Jones were examined, and two waiver-of-rights forms (one for each interview) were introduced into evidence. The trial court found that no *Miranda* violation had occurred. *Id.*

Jones' two-day trial began in July 2011. SCR, Vol. 2, p. 1. He appeared at the courthouse in his yellow MDOC prison jumpsuit, wearing a waist shackle and leg irons. SCR, Vol. 2, p. 15. The prosecution raised a concern about the jury's seeing Jones restrained; as such, the court held a hearing on the matter in chambers. SCR, Vol. 2, p. 17. After testimony from MDOC officers about whether Jones should remain restrained, the judge decided that Jones should not walk before the jury with restraints on, but would already be seated at the defense table when they entered. However, after voir dire, the judge noted it was apparent the jury had seen Jones in restraints. SCR, Vol. 2, p. 47.

Therefore, prior to the State's opening statement, he instructed the jury that the fact Jones was already in the custody of the MDOC had no bearing on his guilt or innocence for the current charge.

SCR, Vol. 2, p. 77, 82.  Then, during the State's opening statement, the jury had to be excused when the court reporter had technical difficulties.  SCR, Vol. 2, p. 86.  Upon their return, the judge announced that Jones' restraints had been removed, and again instructed the jury to disregard the restraints as evidence of guilt or innocence.  SCR, Vol. 2, p. 87.  On the second day of trial, Jones was not shackled and wore civilian clothes.  SCR, Vol. 2, p. 115.

At trial the State called four witnesses.  Officer Nichols testified that Money Tree notified him when no record of the account for the first cashed check was found.  Nichols called the Woodforest Bank and discovered the account number listed on the check never existed.  Further, he could get no answer when he called the phone number listed on the check for "Real's Trucking."  In addition, a computer search for the Gunnison company address yielded nothing, and satellite photographs showed the area to be residential.  SCR, Vol. 2, p. 92-110, 119-126.

 The first time Officer Nichols interviewed Jones was after he attempted to cash the second check on October 24, 2009.  At that time, Nichols could not verify that the Goss Roofing check was invalid, but he confronted Jones about the invalidity of the Real's Trucking check.  Jones told him both checks were for some work he had done for two different people, but he could not provide Officer Nichols with the names of the people who had given him the checks.  Also during the interview, Jones revealed he was from Rosedale, Mississippi, and had a cousin by the name of "Joe Pearls," but he did not provide any further useful information for the investigation and was released. SCR, Vol. 2, p. 92-110, 119-126.

On December 4, 2009, Officer Nichols interviewed Jones again.  At this point, Jones was under arrest and gave a lengthy statement that revealed an illegal check-cashing scheme, in which he and others were receiving the checks from an man named Ellis Urshery.  The CD audio recording of both of Jones' statements was entered into evidence, and portions were played for the jury during

Officer Nichols' examination.  SCR, Vol. 2, p. 106.  In both interviews, Officer Nichols immediately advised Jones of his *Miranda* rights, and Jones signed a statement waiving those rights.  SCR, Vol. 2, p. 92-110, 119-126.  Indeed, law enforcement officers reminded Mr. Jones at least *nine times* during the interview that he had requested an attorney and did not have to talk anymore, but Mr. Jones – of his own volition – just kept talking, trying to negotiate a plea deal.  *Audio Recordings of Interviews*.  Eventually, he told investigators that he knew a great deal about the check-cashing scheme and was willing to help them charge and convict the ringleaders.  *Id*.

Linda Tutor, who had worked at Money Tree for approximately four years, testified regarding Jones' two check-cashing attempts.  SCR, Vol. 2, p. 127-141.  In addition, Woodforest Bank employee Tameka Dowl, from the Senatobia, Mississippi branch, testified that she could not find the name or number associated with that account in the bank's system for the first check.  SCR, Vol. 2, p. 141-145.  The bank also has branches in Greenville and Clarksdale, Mississippi.  Finally, a Gunnison resident, Jackie Lloyd, testified that the address on the Real's Trucking check was actually her residential address, and there had never been such a business at that house or in Gunnison.  The residence had been purchased after a foreclosure.  SCR, Vol. 2, p. 145-147.

The State rested; the defense called no witnesses, and the jury found Jones guilty of uttering forgery.  At Jones' sentencing, proof of two prior convictions was entered into evidence – a bank robbery in Illinois in 1999 and the Washington County Kroger robbery in 2009.  SCR, Vol. 3, p. 187, 194-95.  The court sentenced Jones as a habitual offender under Mississippi Code Annotated § 99-19-81 to serve ten years in the custody of the MDOC, without the possibility for parole or probation.  SCR, Vol. 1, p. 124-25, 141-143; Vol. 3, 203.  Jones filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the court denied.  SCR, Vol. 1, p. 128-130, 136.

**Grounds Four and Thirty-One:  Sufficiency of the Evidence**

In Grounds Four and Thirty-One, Mr. Jones challenges the sufficiency of the evidence for his conviction.  A challenge to the sufficiency of the evidence can support a claim for *habeas corpus* relief only if the evidence, when viewed in the light most favorable to the State is such that no reasonable fact finder "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Marler v. Blackburn*, 777 F.2d 1007, 1011 (5th Cir. 1985).[5]  This standard of review "preserves the integrity of the trier of fact as the weigher of the evidence."  *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983). Under the *Jackson* standard, a trier of fact may find the evidence sufficient to support a conviction even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence."  *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992).

The Fifth Circuit Court has reaffirmed the *Jackson, supra*, test for sufficiency of the evidence in *United States v. Vargas-Ocampo*, 747 F.3d 299, 135 S. Ct. 170, 190 L. Ed. 2d 121 (5th Cir. 2014):

> [C]ourts remain empowered to consider, for instance, whether the inferences drawn by a jury were rational, as opposed to being speculative or insupportable, and whether the evidence is sufficient to establish every element of the crime. *See United States v. Nevils,* 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc). We reject no other formulations conscientiously applying the *Jackson* standard except the 'equipoise rule.'"  *Id*, at 301. As set forth below, the record clearly contains evidence sufficient to support the jury's finding of guilt for uttering a forgery under Miss. Code Ann. § 97-21-59.[6]

---

[5] "A federal *habeas* court has no power to grant *habeas* relief because it finds that the state conviction is against the 'weight' of the evidence . . . ."  *Young v. Kemp,* 760 F.2d 1097, 1105 (11th Cir. 1985), *cert. denied*, 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986).  This is true because the weight of the evidence is decided by the trial jury and, if found to be inadequate, the remedy is a new trial.

[6] Miss. Code Ann. § 97-21-59 provides:

> Every person who shall be convicted of having uttered or published as true, and with intent to defraud, any forged, altered, or counterfeit instrument, or any counterfeit gold or silver coin, the forgery, altering, or counterfeiting of which is declared by the

The Mississippi Court of Appeals held that:

> It was undisputed that the checks presented to the Money Tree were in Jones's prior possession. Therefore, "[a] rebuttable presumption of his guilty knowledge arose. 'It is well settled that either unexplained or unsatisfactorily explained possession of a forged instrument by the defendant is prima facie evidence that he either committed the forgery himself, or procured another to do so.'" *Cannady v. State*, 855 So.2d 1000, 1003(Miss.Ct.App.2003) (*quoting Rowland v. State*, 531 So.2d 627, 630 (Miss.1988)).
>
> Jones did not present a case after the State rested. Jones explained in the second audio-recorded interview that he obtained the checks from Ellis Urshery, who used people to "work" and then cash the checks. This statement does not rebut the State's prima facie case for "guilty knowledge." While it is a reasonable explanation for possession of the forged check, Jones admitted knowledge and involvement in the check-cashing scheme. Jones claims the testimony of Officer Nichols, Tutor, and Dowl failed to establish that the checks were forged, or Jones knew they were forged. We disagree. There was no record of an account belonging to Real's Trucking at Woodforest Bank, and no evidence the company even existed. In the second interview, Jones admitted knowledge of a fraudulent check-cashing scheme. The remaining factual discrepancies Jones points out in his brief relate to questions of fact for the jury to decide, or questions that might have been posed at trial on cross-examination, and not the sufficiency of the evidence. Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found all of the elements of uttering forgery beyond a reasonable doubt. Accordingly, the trial court did not err in denying Jones's motions for a directed verdict or JNOV.

*Jones,* 130 So.3d at 530-531. Mr. Jones alleges, essentially, that he did not participate in the criminal check-cashing scheme. He alleges, instead, that he had the peculiar misfortune of twice being duped into cashing a fraudulent check. The jury was free to make that factual finding, but did not do so.

After reviewing the evidence, a rational fact finder could have found the essential elements of uttering forgery under Miss. Code Ann. § 97-21-59 beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307 (1979). Therefore, the Mississippi Supreme Court's resolution of the issue in Grounds Four and Thirty-One was neither contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme

---

provisions of this chapter to be an offense, knowing such instrument or coin to be forged, altered, or counterfeited, shall suffer the punishment herein provided for forgery, pursuant to Section 97-21-33.

Court of the United States; *habeas corpus* relief is not warranted.

**Prosecutorial Misconduct:  Grounds Seven, Eight,
Eighteen, Twenty-Five, and Twenty-Nine**

In Grounds Seven, Eight, Eighteen, Twenty-Five, and Twenty-Nine, Jones raises claims of

prosecutorial misconduct. The Mississippi Supreme Court found no merit to these claims when they

were raised on post-conviction review. Jones alleges that the prosecution purposefully withheld

evidence in order to get a conviction and used false evidence in the testimony of Linda Tutor.

Regarding prosecutorial misconduct, the Fifth Circuit Court of Appeals has held:

> This court's review of an assertion of prosecutorial misconduct takes place in two
> steps.  First, we must initially decide whether or not the prosecutor made an improper
> remark. *United States v. Munoz*, 150 F.3d 401, 414 (5th Cir.1998).  If an improper
> remark was made, we must then evaluate whether the remark affected the substantial
> rights of the defendant.  *Id.* at 415; *Garza*, 608 F.2d at 663.  In assessing whether
> statements made by a prosecutor were improper, it is necessary to look at them in
> context.  *United States v. Washington*, 44 F.3d 1271, 1278 (5th Cir.1995).

*United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999).  The Fifth Circuit has expounded

on this issue:

> When the prosecutor's remarks during closing argument are both inappropriate and
> harmful, a defendant may be entitled to a new trial.  *United States v. Simpson*, 901 F.2d
> 1223, 1227 (5th Cir. 1990), *cert. denied*, 510 U.S. 983, 114 S.Ct. 486, 126 L.Ed.2d 436
> (1993).  The prosecutor's improper remarks standing alone, however, are insufficient
> to overturn a criminal conviction.  *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct.
> 1038, 1044, 84 L.Ed.2d 1 (1985).  Rather, the defendant must show that the
> prosecutor's remarks affected his substantial rights.  *Simpson*, 901 F.2d at 1227.  "To
> determine whether the argument affected the defendant's substantial rights, we
> examine (1) the magnitude of the statement's prejudice, (2) the effect of any
> cautionary instructions given, and (3) the strength of the evidence of the defendant's
> guilt."  *Simpson*, 901 F.2d at 1227; *Lowenberg*, 853 F.2d at 302.

*United States v. Tomblin,* 46 F.3d 1369, 1389 (5th Cir. 1995), *see also United States v. Pineda-Ortuno,*

952 F.2d 98, 106 (5th Cir.), cert. denied, 504 U.S. 928, 112 S.Ct. 1990, 118 L.Ed.2d 587 (1992)

("Criminal convictions are not to be lightly overturned on the basis of a prosecutor's comments

standing alone.")  A review of the record reveals that the prosecutor made no improper arguments at

trial.  Mr. Jones has offered no evidence to prove his claim of misconduct, and the record contains no

evidence of impropriety by the prosecution.  Linda Tutor testified at trial regarding Jones' attempts to

cash checks at Money Tree, and Mr. Jones' defense counsel cross-examined her.  SCR, Vol. 2, p. 127-

141.  Thus, the appellate court's resolution of this issue was neither contrary to clearly established

federal law, nor did it involve an unreasonable application of clearly established federal law as

determined by the Supreme Court of the United States.

### Appearance in Restraints:  Ground Two

In Ground Two, Jones claims that the trial court erred in allowing Jones to appear before the

jury while shackled / in restraints. When the issue was raised on direct appeal, the Mississippi Court of

Appeals held that it had no merit:

> Here, the trial judge went through a detailed hearing on whether or not Jones was a
> security concern.  The two MDOC transport officers stated they had orders to keep
> Jones restrained, and one officer stated he did not feel comfortable having Jones
> unrestrained.  The prosecutor agreed.  Jones's attorney did not object to the restraints,
> but he did express concern that they should not be "obvious."
>
> It is clear from the transcript that the restraints, found on Jones's waist and legs, were
> not "readily apparent" to the jury, but when they were seen by the jury, the trial judge
> ordered them removed.  The judge also attempted to keep the appearance of Jones's
> restraints at a minimum by having Jones remain seated as the jury entered and exited
> the courtroom. Finally, the trial judge instructed the jury twice to disregard the
> restraints as proof of innocence or guilt.
>
> Jones makes the argument that when the trial judge had Jones's restraints removed, it
> indicated his initial decision to leave Jones's restraints on was "plain error," and
> Jones's conviction should be reversed.  We find no merit to this argument.  Removing
> the restraints indicated that the trial judge wanted to prevent any prejudice to Jones.
> There was no evidence that Jones was prejudiced by temporarily appearing before the
> jury in restraints, especially in light of the trial judge's two instructions to the jury that
> the restraints were immaterial to the charges before them.  The trial judge did not
> abuse his discretion in this regard.

*Jones,* 130 So.3d at 528.

First, Jones' allegation in Ground Two fails to state a claim on which *habeas corpus* relief can

be granted and as such should be dismissed. Under Mississippi law, courts prefer the defendant to be unrestrained; however, a defendant must make a showing of prejudice to the defendant before a court may reverse a conviction on this ground. *Williams v. State*, 962 So.2d 129, 131 (Miss.Ct.App.2007). Under these facts, the trial court's decision to permit Mr. Jones to enter the courtroom in restraints in the presence of the prospective jurors did not adversely affect his right to a fair trial. As such, the appellate court's resolution of the issue in Ground Two was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Thus, Mr. Jones is not entitled to *habeas corpus* relief as to this ground.

### Defective Indictment: Grounds One and Twenty-Eight

In Grounds One and Twenty-Eight, Jones alleges that his indictment was defective. When Jones raised this claim on direct appeal, the Mississippi Court of Appeals held that it was procedurally barred for failure to raise an objection at trial. The Fifth Circuit has held that the failure to present an issue to the trial court is an independent and adequate state procedural bar. *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992), *see also Day v. King,* No: 1:03CV624-DMR-JMR, 2006 WL 2541600, at *4 (S.D.Miss. August 31, 2006) [7](For a list of Mississippi cases holding issues procedurally barred for failure to lodge a contemporaneous objection or present the issue to the trial court.) The Mississippi Court of Appeals held that, even if the claim were not procedurally barred, it was additionally without merit.

---

[7] For examples of cases in which the Mississippi courts have consistently applied this bar see the following: *Wansley v. State,* 734 So.2d 193, 198 (Miss.App.1999); *Turner v. State,* 732 So.2d 937, 948 (Miss.1999); *Smith v. State,* 729 So.2d 1191, 1201 (Miss.1998); *Brewer v. State,* 725 So.2d 106, 132 (Miss.1998); *Smith v. State,* 724 So.2d 280, 309 (Miss.1998); *Hunter v. State,* 684 So.2d 625, 637 (Miss.1996); *Foster v. State,* 639 So.2d 1263, 1288-89 (Miss.1994); *Lambert v. State,* 574 So.2d 573, 577 (Miss .1990).

The indictment states that:

> Latitus Jones ... on or about October 15, 2009 ... did unlawfully, wilfully and feloniously, utter or publish as true to Linda Taylor, at Money Tree, a certain forged, altered or counterfeit instrument purporting to be check no. 1029 dated October 15, 2009, on the Woodforest Bank, account of Real Trucking, Inc., in the amount of $950.09, when he ... knew the same to be forged, altered or counterfeit with the intent to defraud ... Woodforest Bank, and/or Money Tree, and/or Real Trucking, Inc., there being a true and correct copy of said check attached hereto and made a part hereof....

SCR, Vol. 1, p. 7. While there was no "true and correct copy" of the described check attached to the indictment, the Mississippi Court of Appeals found that the indictment's text clearly gave Jones sufficient notice of the uttering-forgery charge against him, so that he could prepare an adequate defense. The State made no attempt to correct or amend the attachment, but the record reflects that both Jones and his counsel were aware of the nature of the charge. Jones' indictment contains a full description of the crime of uttering forgery and the check Jones used in that crime by Jones. Both checks were entered into evidence at trial.

Further, even if the claim were not barred by the lack of a contemporaneous objection, this challenge to the indictment is strictly a matter of state law and is thus precluded from federal *habeas corpus* review. A state's interpretation of its own laws or rules is no basis for federal *habeas* corpus, as no constitutional question is involved. *Bronstein v. Wainwright,* 646 F.2d 1048, 1050 (5th Cir. 1981). The role of a federal court is more limited than that of the state appellate court. *Skillern v. Estelle,* 720 F.2d 839, 852 (5th Cir. 1983). In *Mendiola v. Estelle,* 635 F.2d 487, 491 (5th Cir. 1981), the Court stated: "We have repeatedly admonished that we do not sit as a super state supreme court on a *habeas corpus* proceeding to review error under state law." The federal courts hold no supervisory power over state judicial proceedings, and federal *habeas corpus* relief is appropriate only when a conviction has been obtained in violation of a constitutionally protected right. *Smith v. Phillips,* 455 U.S. 209, 221 (1981). A "mere error of state law" is not a denial of due process. *Engle v. Isaac,* 465 U.S. 107,

121 and n.21, 102 S.Ct. 1558 and n.21, 71 L.Ed.2d 783 (1982).

Indeed, the sufficiency of a state indictment is not a matter for federal *habeas corpus* relief unless the petition can show that the indictment was so defective that the convicting court had no jurisdiction. *Riley v. Cockrell,* 339 F.3d 308, 313-14 (5th Cir. 2003); *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir. 1994) (*citing Branch v. Estelle,* 631 F.2d 1229 (5th Cir. 1980); *Alexander v. McCotter,* 775 F.2d 595, 598 (5th Cir. 1985) (citations omitted). Clearly, Mr. Jones was on fair notice of the charges against him, as described above. In addition, despite Mr. Jones' argument to the contrary, the indictment complied with Rule 7.09 of the Uniform Circuit and County Court Rules. As such, Mr. Jones cannot show that the indictment was so defective it deprived the court of jurisdiction.

Finally, if the state court has held that an indictment is sufficient under state law, "a federal court need not address that issue." *McKay,* 12 F.3d at 68 (citations omitted). The Mississippi Supreme Court found that Jones' challenge to the indictment in his direct appeal and motion for post-conviction (the same argument found in the instant petition) was without merit. Thus, the court need not address this issue. Mr. Jones has not asserted the violation of a constitutional right in the present ground for relief. Hence, Mr. Jones' challenge to the indictment is barred, without substantive merit, and precluded from *habeas corpus* review. Jones' claim challenging the indictment in Grounds One and Twenty-Eight will be denied.

### Confession and *Miranda* Warnings: Grounds Three, Nine, and Nineteen

In Grounds Three, Nine, and Nineteen, Mr. Jones claims that the trial court erred in failing to suppress audio recordings of his statements to the police, which he claims were taken in violation of his *Miranda* rights. On direct appeal, the Mississippi Court of Appeals held:

> Jones's waiver of *Miranda* rights was voluntary, and his continuing to speak without
> the presence of his requested attorney was also voluntary. Accordingly, the trial court

did not abuse its discretion in finding no *Miranda* violation.

*Jones,* 130 So.3d at 530.

The Supreme Court has established that:

A defendant has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

…

In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

…

Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

*Miranda v. Arizona,* 384 U.S. 436, 478-79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Jones alleges that he invoked his right to counsel at the interview, but the officers proceeded to

coerce, intimidate, and confuse him. In addition, he states his signed waiver-of-rights form is invalid

because it was involuntary. As set forth above, the trial court conducted a thorough pretrial hearing to determine the validity of Jones' *Miranda* claims. SCR, Vol. 2, p. 49-76. The court found no *Miranda* violation, and the audio recording of the interviews was entered into evidence during Officer Nichols' direct examination.

At the hearing, Officer Nichols and Jones both testified about the two interviews: October 24, 2009, and December 4, 2009. In the first interview, Officer Nichols testified that Jones did not offer much useful information for the investigation. SCR, Vol. 2, p. 98. In the second interview, Jones implicated others involved in the scheme. *Id.* During both interviews, Jones was advised of his *Miranda* rights before questioning began. *Id* at 99-101, 107. Jones stated that he understood those rights and signed a *Miranda* waiver form. *Id.* The two signed waiver-of-rights forms were introduced into evidence. SCR, Vol. 2, p. 55, 80. In the December 2009 meeting, Officer Nichols testified that Jones signed the waiver about ten minutes after he had been read his rights, but before he gave a statement that officers could use against him. The audio recording confirms Officer Nichols' testimony. SCR, Vol. 2, p. 106.

Jones argues that, during the December interview, the officer improperly continued to question him after he requested a lawyer. Under *Miranda*, law enforcement officers must warn a defendant of the right to remain silent and the right to an attorney before any custodial interrogation occurs. The records shows that, while Jones initially requested a lawyer directly after his *Miranda* rights were read, he voluntarily initiated further conversation with Officer Nichols – who actually warned Jones that, as he had requested a lawyer, if he continued to talk, it was of his own free will. Despite this warning, Jones continued to converse with Officer Nichols for approximately ten minutes before he signed the waiver-of-rights form. Jones then voluntarily told Officer Nichols that he was willing to make a statement without a lawyer because he "had nothing to hide." *Jones,* 130 So.3d at 529.

Approximately thirty minutes later, Jones requested a lawyer again, but – again – he continued his

conversation with Officer Nichols.  Jones was never coerced into talking with Nichols; nor did anyone

threaten him by word or action to pressure him into making a confession.  The interview lasted about

an hour and twenty minutes.  *Id*.  Jones himself continued the conversation even after he requested

counsel.  As set forth above, Officer Nichols warned Mr. Jones at least *nine times* that he had invoked

his right to counsel.  Mr. Jones chose to continue talking, trying to obtain a plea bargain to his benefit.

For this reason, the appellate court's resolution of the issue regarding *Miranda* violations was not

contrary to clearly established federal law, nor did it involve an unreasonable application of clearly

established federal law as determined by the Supreme Court of the United States.  As such, Mr. Jones

is not entitled to federal *habeas corpus* relief as to Grounds Three, Nine, or Nineteen.

**Sentencing as a Habitual Offender:**
**Grounds Ten, Twenty-One, Twenty-Two, and Thirty**

In Grounds Ten, Twenty-One, Twenty-Two, and Thirty, Jones argues that he should not have

been sentenced as a habitual offender, and, for this reason, his sentence is illegal. The Mississippi

Supreme Court held that this issue had no merit when Jones raised it on post-conviction collateral

review.  Mr. Jones was convicted for uttering a forgery in violation of Miss. Code Ann. § 97-21-59,

and was sentenced to serve ten years, without the possibility for parole or probation.  The court found

that Mr. Jones had previously committed two felony crimes based upon charges separately brought or

arising out of separate incidents at different times, and on each of those charges, was sentenced to

separate terms of one year or more in a state or federal penal institution.  The court thus sentenced Mr.

Jones as a habitual offender under Miss. Code Ann. § 99-19-81:

> Every person convicted in this state of a felony who shall have been convicted twice
> previously of any felony or federal crime upon charges separately brought and arising
> out of separate incidents at different times and who shall have been sentenced to
> separate terms of one (1) year or more in any state and/or federal penal institution,

whether in this state or elsewhere, **_shall_** be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-81 (emphasis added).

It appears that Mr. Jones makes two arguments in support of this claim:  (1) that the evidence was insufficient to support an enhanced sentence under § 99-19-81, and (2) that his sentence was disproportionate to the crime committed.  Neither argument has merit.

First, the State adduced sufficient evidence to establish that Mr. Jones has two prior convictions to meet the criteria for an enhanced sentence under Miss. Code Ann. § § 99-19-81.  The State offered certified copies of two prior convictions:  one from the United States District Court for the Northern District of Illinois and another from the Circuit Court of Washington County, Mississippi.  SCR, Vol. 3 at 183-195.  The trial court noted that such documents are self-authenticating, and Mr. Jones has not contested those convictions and sentences.  This claim is without substantive merit.

Mr. Jones' argument regarding the severity of his sentence is likewise without merit.  A petitioner is entitled to _habeas corpus_ relief as to his sentence only if he is able to show that his sentence "exceeds or is outside the statutory limits, or is wholly unauthorized by law."  _Haynes v. Butler,_ 825 F.2d 921, 923 (5th Cir. 1987).  The governing jurisprudence leaves no "clear or consistent path for courts to follow" in determining whether a sentence violates the Eighth Amendment.  _Lockyer v. Andrade_, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).   However, "one governing legal principle emerges as 'clearly established' under § 2254(1):  A gross disproportionality principle is applicable to sentences for terms of years."  _Id._  The Supreme Court held that the contours of such a proportionality principle are unclear, and it applies only in "'exceedingly rare' and 'extreme' cases."  _Id._ (citations omitted).

Mr. Jones has offered nothing to support his argument that a sentence of ten years' incarceration is grossly disproportionate to the crime of uttering forgery, especially in light of his prior convictions. As such, the appellate court's ruling was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Mr. Jones is not entitled to *habeas corpus* relief as to Grounds Ten, Twenty-One, Twenty-Two, or Thirty.

### Ineffective Assistance of Counsel: Grounds Five and Fourteen

In Grounds Five and Fourteen, Jones claims that he received ineffective assistance of counsel. The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense or appellate counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to his defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable

argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

The Mississippi Supreme Court found no merit to Jones' claims in his application for post-conviction collateral relief that counsel provided ineffective assistance, and the record does not support such a claim. In reviewing the performance of appellate counsel, the two-pronged test of *Strickland* is likewise applied. *See Evitts v. Lucey*, 469 U.S. 387, 397-399 (1985). Appellate counsel need not raise every "colorable" claim on appeal, as counsel has broad discretion in determining which arguments would most likely be successful. Under *Jones v. Barnes*, 463 U.S. 745, 751-754 (1985). In the instant case, Jones was represented at trial by Wilbert Johnson and on direct appeal by George Holmes, Phillip Broadhead, and law students from the Criminal Appeals clinic at the University of Mississippi School of Law. Mr. Jones' appellate brief was thoroughly researched and painstakingly prepared.

Mr. Jones simply has not alleged how any specific errors of counsel undermined his trial or the direct appeal of his conviction for uttering a forgery. The state court record shows that defense counsel at trial and on appeal performed admirably in the face of overwhelming evidence of Jones' guilt – including his confession. Mr. Jones has not shown how his counsel's actions were deficient; nor has he shown that, but for counsel's alleged errors, the results of the proceeding would have been different. Based on the record, there is not a "reasonable probability" that, but for the alleged errors of the Jones' attorney, his trial or direct appeal would have been resolved differently. For these reasons, the Mississippi Supreme Court correctly denied relief on Mr. Jones' claims of ineffective assistance of counsel, and his request for *habeas corpus* relief as to Grounds Five and Fourteen will be denied.

### Actual Innocence: Ground Twelve

In Ground Twelve, Jones raises a claim of actual innocence. The Mississippi Supreme Court

found no merit to this claim when Jones raised it in his motion for post-conviction relief.  The

Supreme Court has yet to definitively resolve whether there is a federal Constitutional right to be

released upon proof of actual innocence.  § 6:17.  Freestanding claim of actual innocence,

Postconviction Remedies.  As Chief Justice Roberts noted,

> Whether such a federal right exists is an open question. We have struggled with it over
> the years, in some cases assuming, *arguendo,* that it exists while also noting the
> difficult questions such a right would pose and the high standard any claimant would
> have to meet.  *House[v. Bell],* 547 U.S., at 554–555, 126 S.Ct. 2064; *Herrera [v.
> Collins],* 506 U.S., at 398–417, 113 S.Ct. 853; see also *id.,* at 419–421, 113 S.Ct. 853
> (O'Connor, J., concurring); *id.,* at 427–428, 113 S.Ct. 853 (Scalia, J., concurring);
> Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi.
> L.Rev. 142, 159, n. 87 (1970).

*Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71–72, 129 S. Ct. 2308, 2321,

174 L. Ed. 2d 38 (2009).  Mr. Jones, however, offers only his bare assertion that he is actually innocent

of the crime for which he was convicted, and such "conclusory allegations do not raise a constitutional

issue in a *habeas* proceeding."  *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).  As such, Mr.

Jones is not entitled to *habeas corpus* relief based upon his claims in Ground Twelve.

### Miscellaneous Claims:  Grounds Eleven, Thirteen, Twenty, and Twenty-Four

In his petition, Jones makes several statements that he labels "grounds," which do not contain

independent constitutional claims for *habeas corpus* relief. In Ground Eleven, Jones states that "this

court is required pursuant to *Haines v. Kerner*, 404 US 519 (1972) to liberally construe petitioner's

herein asserted grounds for relief."  In Ground Thirteen, Jones states that he "is entitled to the relief

[*sic*] the conviction and the sentence."  In Ground Twenty, Jones states only that he is entitled to due

process. Finally, in Ground Twenty-Four, Jones states that this Court is not to disregard his claims due

to "inartful drafting" and cites to *Moore v. Ruth*, 556 So.2d 1059, 1060 (Miss. 1996).

The allegations in these grounds for relief do not state a claim upon which *habeas corpus*

relief can be granted – and will be dismissed. As to Mr. Jones' request that the court liberally construe his *pro se* petition, the court has done so under the requirement set forth in *Haines v. Kerner*, 404 U.S. 519 (1972). Nonetheless, "mere conclusory allegations do not raise a constitutional issue in a *habeas* proceeding." *Schlang v. Heard,* 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases), *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

## Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 13th day of March, 2018.


**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**